UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

AMANDA GIBBS,
    Plaintiff,

v.

Case No. 4:21-cv-1140-CLM

TRI CITIES SENIOR
HOUSING, LLC,
    Defendant.

## MEMORANDUM OPINION AND ORDER

    Amanda Gibbs sued her former employer under the Family Medical Leave Act, 29 U.S.C. § 2601 *et seq.*, the Americans with Disabilities Act, 42 U.S.C. § 12111 *et seq.*, the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.*, and for race discrimination under 42 U.S.C. § 1981. (Doc. 14). After Gibbs twice amended her complaint, Tri Cities moved for partial dismissal of the Second Amended Complaint. (Doc. 16). Tri Cities asks the Court to dismiss Gibbs' ADA claim (Count B), Section 1981 claim (Count C), and FLSA claim (Count D). (*Id.*).

    This Opinion and Order assumes the parties' familiarity with background of the case and Gibbs' allegations. For the reasons below, the Court **DENIES** Tri Cities' motion as to the ADA claim and **GRANTS** the motion as to the Section 1981 and FLSA claims.

### STANDARD OF REVIEW

    "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The plaintiff's "[f]actual allegations must be enough to raise

a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. In reviewing the complaint, the Court accepts the plaintiff's well-pleaded allegations as true and makes all reasonable inferences in her favor. *Crowder v. Delta Air Lines, Inc.*, 963 F.3d 1197, 1202 (11th Cir. 2020). But the Court disregards "mere conclusory statements" and "[t]hreadbare recitals of the elements of a cause of action." *Ashcroft*, 556 U.S. at 678.

## DISCUSSION

The Court divides its discussion into three parts. First, the ADA claim (Count B). Second, the Section 1981 claim (Count C). Third, the FLSA claim (Count C).

### I.   Americans with Disabilities Act (Count A)

Gibbs asserts three theories of ADA liability. First, under a failure-to-accommodate theory, Gibbs alleges that Tri Cities failed to reasonably accommodate her disability by refusing her requests for "time off to seek medical attention." (Doc. 14 at 6 ¶ 57). Second, under a disparate-treatment theory, Gibbs alleges that Tri Cities terminated her employment based in substantial part on her "disability, request for accommodation, and potential need for further reasonable accommodations." (*Id.* at 6–7 ¶ 59). And third, under a retaliation theory, Gibbs alleges that Tri Cities terminated her employment based on "her attempt to exercise her rights" under the ADA. (*Id.* at 7 ¶ 62).

Tri Cities makes four arguments. First, it argues that Gibbs' work-related "musculoskeletal injury" is not an actual disability under the ADA. (Doc. 16 at 5–7). Second, it contends that her disparate-treatment theory (based on her termination) fails because she offered only conclusory allegations about causation and comparators. (*Id.* at 8). Third, it asks the Court to dismiss her retaliation theory because it relies on the same facts as her disparate-treatment theory. (*Id.* at 8–9). And fourth, it argues that the retaliation claim fails because Gibbs didn't plausibly allege that she engaged in statutorily protected activity. (*Id.* at 9).

### A. Did Gibbs plausibly allege a disability?

The anti-discrimination provision of the ADA prohibits employers from discriminating "against a qualified individual on the basis of disability" regarding, among other things, "discharge of employees" and "other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). And failing to make "reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability" can amount to discrimination. *Id.* § 12112(b)(5)(A). Likewise, the anti-retaliation provision prohibits retaliation against an individual for opposing an unlawful practice or making a charge under the ADA. *See* 42 U.S.C. § 12203(a).

All three of Gibbs' theories of ADA liability turn on whether she plausibly alleged that her "musculoskeletal injury" is an actual or perceived disability under the ADA. If it isn't, then Tri Cities cannot be liable under the ADA for failing to provide an accommodation or for firing her. *See Frazier-White v. Gee*, 818 F.3d 1249, 1255 (11th Cir. 2016) (explaining that a plaintiff must show that "she is disabled"). And it wouldn't be liable for retaliation because her request for an accommodation likely wouldn't be "statutorily protected expression." *See id.* at 1258; *but see Standard v. A.B.E.L. Servs., Inc.*, 161 F.3d 1318, 1328 (11th Cir. 1998) (explaining that it is enough to show "a good faith, objectively reasonable belief that [the plaintiff] was entitled to those accommodations under the ADA").

Gibbs alleged that she "sustained a work related musculoskeletal injury to her neck and/or back, which precluded her ability to work for days." (Doc. 14 at 2 ¶ 8). She says the "injury severely impeded her mobility, including but not limited [to] her ability to walk, run, lift, and stand." (*Id.* ¶ 8). Tri Cities argues that Gibbs' does not plausibly allege an ADA disability because her injury is a "non-severe, temporary impairment[]." (Doc. 16 at 6).

Accepting Gibbs' allegations as true, the Court finds that Gibbs plausibly alleged an actual ADA disability based on the text and statutory context of the ADA's definition of "disability." 42 U.S.C. § 12102.

1. **<u>The Text</u>**. The Court begins with the statutory text. *See Tanzin v. Tanvir*, 141 S. Ct. 486, 489 (2020). The ADA defines "disability" as, among other things, "a physical or mental impairment that substantially limits one or more major life activities of such individual." 42 U.S.C. § 12102(1)(A). And as amended by the ADA Amendments Act of 2008, the text clarifies that "major life activities include, but are not limited to, caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." *Id.* § 12102(2)(A); *see also* ADA Amendments Act of 2008, Pub. L. No. 110-325, § 4(a), 122 Stat. 3553, 3555. Congress also added that "disability . . . shall be construed in favor of broad coverage . . . to the maximum extent permitted by the terms of this chapter." 42 U.S.C. § 12102(4)(A).

Accepting as true that Gibbs' injury "severely impeded" her ability to "walk, run, lift, and stand," (doc. 14 at 2 ¶ 9), Gibbs appears to have plausibly alleged an "impairment that substantially limit[ed] one or more major life activities," 42 U.S.C. § 12102(1)(A). That remains true even if she doesn't allege that her limitations were permanent or long-lasting.

2. **<u>The Statutory Context</u>**. Statutory context supports the reading that a short-term but severe limitation can be an ADA disability. "It is a fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme." *Home Depot U. S. A., Inc. v. Jackson*, 139 S. Ct. 1743, 1748 (2019).

An enacted congressional purpose of rejecting the Supreme Court's narrow reading of the statute (a reading that included a permanent-or-long-lasting-impairment requirement) and statutory history inform the context of the current version of the statute. Statutory context "includes the purpose of the text" and its "*statutory* history." *See* A. SCALIA & B. GARNER, READING LAW: THE INTERPRETATION OF LEGAL TEXTS 56, 256 (2012); *see also id.* at 217 ("A preamble, purpose clause, or recital is a permissible indicator of meaning."). And the Court "must favor the 'textually permissible interpretation that furthers rather than obstructs' the statute's purposes." *United States v. Bryant*, 996 F.3d 1243, 1256 (11th Cir. 2021) (quoting SCALIA & GARNER at 63).

The original version of the Americans with Disabilities Act said that "[t]he term 'disability' means," among other things, "a physical or mental impairment that substantially limits one or more of the major life activities of such individual." Americans with Disabilities Act of 1990, Pub. L. 101–336, § 3(2)(A), 104 Stat. 327, 329–30. But it did not define what constituted "major life activities," as the statute now does. The Supreme Court interpreted the original version of the Act to require "an impairment that prevents or severely restricts the individual from doing activities that are of central importance to most people's daily lives." *Toyota Motor Mfg., Ky., Inc. v. Williams*, 534 U.S. 184, 198 (2002). And the Court relied on an EEOC interpretation in holding that "[t]he impairment's impact must also be permanent or long term." *Id.* (citing 29 C.F.R. § 1630.2(j)(2)(ii)–(iii)). In sum, the Court held that the statute imposed "a demanding standard for qualifying as disabled." *Id.* at 197.

Importantly, Congress expressly rejected *Toyota Motor* in the "Findings and Purposes" of the 2008 Amendments. 122 Stat. 3553–54. Congress found that the *Toyota Motor* Court "interpreted the term 'substantially limits' to require a greater degree of limitation than was intended by Congress." *Id.* at 3553. One of its stated purposes was:

> to reject the standards enunciated by the Supreme Court in Toyota Motor Manufacturing, Kentucky, Inc. v. Williams, 534 U.S. 184 (2002), that the terms "substantially" and "major" in the definition of disability under the ADA "need to be interpreted strictly to create a demanding standard for qualifying as disabled," and that to be substantially limited in performing a major life activity under the ADA "an individual must have an impairment that prevents or severely restricts the individual from doing activities that are of central importance to most people's daily lives.

*Id.* at 3554. And the changes Congress made to the text of the ADA include: (1) adding that "disability" should be "construed in favor of broad coverage of individuals," 42 U.S.C. § 12102(4)(A); and (2) adding a non-exhaustive list of major life activities and expanding that category to include major bodily functions, *id.* § 12101(2). The additions of the non-exhaustive list of major life functions and the rule of broad construction, and Congress's *rejection* of *Toyota Motor*, form the context of the statute.

5

And that context suggests that neither permanency nor a long-lasting duration are necessary conditions of having a "disability."

That does not mean that *any* impairment of a major-life activity constitutes a disability. The text still requires that the impairment "substantially limit[] one or more major life activities." 42 U.S.C. § 12102(1)(A). And the duration of the impairment is a factor that should inform answering whether the impairment imposes a substantial limitation. *See* 29 C.F.R. § 1630.2(j)(1)(ix) ("The effects of an impairment lasting or expected to last fewer than six months can be substantially limiting within the meaning of this section."); *id.* § 1630.2(j)(1)(ix) (app.) ("Impairments that last only for a short period of time are typically not covered, although they may be covered if sufficiently severe.").

Gibbs alleged that her "injury *severely* impeded her mobility, including but not limited [to] her ability to walk, run, life, and stand." (Doc. 14 at 2 ¶ 9 (emphasis added)). That allegation, if true, could support a finding that she was disabled under the ADA.

3. **Tri Cities' Argument**. After saying that Gibbs "alleges that her injury 'impeded her mobility' and 'precluded her ability to work for days,'" (notice that Tri Cities omits the word "severely" from her allegations), it emphasizes that "courts have repeatedly held that such non-severe, temporary impairments do not render a person disabled under the ADA." (Doc. 16 at 5–6).[1] But that argument is irrelevant here because Gibbs' impairments were allegedly *severe*. (Doc. 14 at 2 ¶ 9). And Tri Cities has not identified a case in which non-permanency (or an otherwise short duration) was, on its own, enough to preclude an impairment from constituting a disability. So the Court rejects Tri Cities' argument.

In sum, Gibbs has adequately alleged that she was disabled when she requested an accommodation and when Tri Cities terminated her employment. So this is not a basis to dismiss any of her ADA theories.

---

[1] *See Harris v. Universal Logistics*, 2018 WL 6095197 (N.D. Ala. Nov. 21, 2018); *Wood v. Gilman Bldg. Prods., Inc.*, 2018 WL 10667464 (N.D. Fla. Mar. 19, 2018); *Richardson v. Koch Foods of Ala., LLC*, 2019 WL 1434662 (M.D. Ala. Mar. 29, 2019); *Clark v. Boyd Tunica, Inc.*, 2016 WL 853529 (N.D. Miss. Mar. 1, 2016); *Reynolds v. Ocean Bio Chem/Kinpak, Inc.*, 2014 WL 495354 (M.D. Ala. Feb. 5, 2014).

### B. Did Gibbs adequately plead her disparate-treatment theory based on her termination?

Tri Cities' second argument is that Gibbs' termination-based disparate-treatment claim fails because she alleged only legal conclusions about causation and comparators.

At the motion-to-dismiss stage, Gibbs "need not allege facts sufficient to make out a classic *McDonnell Douglas* prima facie case." *Davis v. Coca-Cola Bottling Co.*, 516 F.3d 955, 974 (11th Cir. 2008) (citing *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511 (2002)).[2] Instead, she need only provide "enough factual matter (taken as true) to suggest" disability discrimination. *See Twombly*, 550 U.S. at 556. But in analyzing whether Gibbs' allegations "state a claim to relief that is plausible on its face," *id.* at 570, the Court disregards "legal conclusions," *Iqbal*, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

Accepting Gibbs' well-pleaded (that is, non-conclusory) allegations as true and making all reasonable inferences in her favor, *Crowder*, 963 F.3d at 1202, Gibbs' complaint adequately alleges a disparate-treatment claim based on her termination. First, she plausibly alleged that she had an ADA disability. (Doc. 14 at 2 ¶¶ 8–9). Second, she plausibly alleged that her employer knew about her disability. (*Id.* ¶ 10). Third, she plausibly alleged that she was otherwise qualified to perform the essential functions of her job. (*Id.* at 6 ¶ 54). And fourth, she adequately alleged that her employer fired her within days of her request for an accommodation. (*Id.* at 3–4). Those facts plausibly suggest disability discrimination.

Tri Cities argues that her claim fails because she only offered conclusory allegations that (1) her disability was a motivating or substantial factor in her termination, and (2) Tri Cities treated similarly situated non-disabled employees more favorably. (Doc. 16 at 8 (citing doc. 14 at 6–7 ¶¶ 59, 63)). But Tri Cities' argument appears to assume that Gibbs must plausibly allege facts that satisfy the *McDonnell Douglas*

---

[2] The Supreme Court abrogated *Davis* on other grounds through *Twombly* and *Iqbal*. *See LaCroix v. Western Dist. of Ky.*, 627 F. App'x 816, 818 (11th Cir. 2015) (recognizing abrogation); *see also Surtain v. Hamlin Terrace Found.*, 789 F.3d 1239, 1246 (11th Cir. 2015).

framework to survive a motion to dismiss; indeed, Tri Cities quotes a case that required a plaintiff to plead a prima facie case. (*Id.* at 7 (quoting *Robinson v. Wellstar Atlanta Med. Ctr., Inc.*, 2019 WL 12448605, at *11 (N.D. Ga. Nov. 4, 2019)). But *McDonnell Douglas*'s prima facie framework is an evidentiary standard, not a pleading requirement. *See Swierkiewicz*, 534 U.S. at 511 ("This Court has never indicated that the requirements for establishing a prima facie case under *McDonnell Douglas* also apply to the pleading standard that plaintiffs must satisfy in order to survive a motion to dismiss."). It is enough that Gibbs' well-pleaded allegations plausibly suggest that Tri Cities terminated her because of her disability.

### C. Must the Court dismiss Gibbs' retaliation theory because it relies on the same facts as her disparate-treatment theory?

Tri Cities points out (correctly) that Gibbs' retaliation theory relies on "the same alleged facts" as her disparate-treatment theory. (Doc. 16 at 8–9). And it says that this warrants dismissal because the Eleventh Circuit has "refused to address a plaintiff's retaliation claims based on an employer's refusal to accommodate her where the described acts relate directly to her reasonable accommodation discrimination claim, not her retaliation claim." *Gilliard v. Ga. Dep't of Corr.*, 500 F. App'x 860, 869 (11th Cir. 2012) (discussing *Stewart v. Happy Herman's Cheshire Bridge, Inc.*, 117 F.3d 1278, 1288 (11th Cir. 1997)) (quotation marks omitted).

But nothing in *Gilliard* or *Stewart* compels this Court to dismiss the retaliation theory just because it relies on the same facts as her disparate-treatment theory. The ADA expressly prohibits retaliation, 42 U.S.C. § 12203(a), just as it expressly prohibits discrimination, 42 U.S.C. § 12112(a). The elements of the two claims are different. *See Frazier-White*, 818 F.3d at 1255 (discrimination); *id.* at 1258 (retaliation). And Rule 8 permits alternative pleading. FED. R. CIV. P. 8(d)(2) ("A party may set out 2 or more statements of a claim or defense alternatively or hypothetically, either in a single count or defense or in separate ones. If a party makes alternative statements, the pleading is sufficient if any one of them is sufficient."). So the Court declines to block Gibbs from pursuing relief under the ADA's anti-retaliation provision.

### D. Did Gibbs plausibly allege protected expression?

Tri Cities argues that the retaliation theory also fails because Gibbs did not engage in statutorily protected expression. (Doc. 16 at 9). So its argument goes, Gibbs' request for an accommodation is not protected activity because her musculoskeletal injury is not a disability. (*Id.*). But this Court has already determined that Gibbs plausibly alleged that her injury (and the impairments it caused) was a disability under the ADA. *See supra* at 6. As a result, Gibbs' request for an accommodation is statutorily protected expression. *See Frazier-White*, 818 F.3d 1258.

\* \* \*

In sum, the Court rejects each of Tri Cities' arguments for dismissing Gibbs' various theories for ADA liability. She may proceed to discovery on her failure-to-accommodate, disparate-treatment (based on her termination), and retaliation theories.

## II. Section 1981 (Count C)

Tri Cities moved to dismiss Gibbs' Section 1981 claim. (Doc. 16 at 10–11). Gibbs made clear that she does not oppose dismissal. (Doc. 21 at 7). So the Court dismisses her Section 1981 claim.

## III. Fair Labor Standards Act (Count D)

Gibbs asserts an FLSA claim for unpaid overtime wages. (Doc. 14 at 8). *See* 29 U.S.C. § 207(a)(1). To state a claim under the FLSA for unpaid wages, an employee must allege: (1) an employment relationship; (2) that the employer or employee engaged in interstate commerce (that is, either enterprise coverage or individual coverage); and (3) that the employer failed to pay overtime compensation and/or minimum wages. *Morgan v. Family Dollar Stores*, 551 F.3d 1233, 1277 n.68 (11th Cir. 2008); *see also Thorne v. All Restoration Servs., Inc.*, 448 F.3d 1264, 1265–66 (11th Cir. 2006) ("Under FLSA, an employer is required to pay overtime compensation if the employee can establish enterprise coverage or individual coverage."). Tri Cities contends that Gibbs didn't adequately plead enterprise or individual coverage. (Doc. 16 at 12).

### A.     Enterprise Coverage

To establish enterprise coverage, a plaintiff must allege that the employer (1) "has employees engaged in commerce or in the production of goods for commerce, or . . . has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person" and (2) has at least $500,000 of annual gross volume or business done. 29 U.S.C. § 203(s)(1)(A). Gibbs makes *no* allegations about Tri Cities' gross sales volume or business done. She has therefore failed to state a claim for enterprise coverage under the FLSA.

Gibbs responds that it is "ludicrous" to require her "to know information such as [Tri Cities'] annual gross volume of sales without conducting discovery." (Doc. 21 at 7). But Rule 8 requires Gibbs' complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). That means that Gibbs' "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). Moreover, those allegations must "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Without pleading about Tri Cities' gross volume or the amount of business it does, the Court can only speculate about whether Gibbs might receive relief under an enterprise theory.

"There is nothing like looking, if you want to find something,"[3] and the Rules contemplate that attorneys will conduct investigations that are "reasonable under the circumstances" before filing a complaint. FED. R. CIV. P. 11(b). Here, that includes an investigation into whether Gibbs can allege in good faith that Tri Cities annual gross volume or business done exceeds the statutory minimum. The Court cannot allow Gibbs to proceed to discovery based on an "unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678.

### B.     Individual Coverage

"For individual coverage to apply under FLSA," Gibbs must plausibly allege that she "was (1) engaged in commerce or (2) engaged in the production of goods for commerce." *Thorne*, 448 F.3d at 1266 (citing

---

[3] J.R.R. TOLKIEN, THE HOBBIT 55 (First Mariner Books ed. 2012) (1937).

29 U.S.C. § 207(a)(1)). Commerce, in context, means "trade, commerce, transportation, transmission, or communication among the several States or between any State and any place outside thereof." 29 U.S.C. § 203(b). Gibbs does not try to allege that she was "engaged in the production of goods for commerce." *Thorne*, 448 F.3d at 1266. So the Court focuses on whether she plausibly alleged that she was "engaged in commerce." *Id.*

The Eleventh Circuit has explained that an employee is "engaged in commerce" if she directly participates in actual interstate-commercial movement "by (i) working for an instrumentality of interstate commerce, *e.g.*, transportation or communication industry employees, or (ii) by regularly using the instrumentalities of interstate commerce in his work, *e.g.*, regular and recurrent use of interstate telephone, telegraph, mails, or travel." *Id.* And the phrase "regular and recurrent" means that "[i]ndirect or sporadic engagement in interstate commerce is insufficient." *Handshaw v. Veterans & Medicaid Plan. Grp., PLLC*, 2019 WL 3854986 (M.D. Fla. Mar. 28, 2019).

Gibbs makes these allegations related to her participation in interstate commerce:

> 76. Plaintiff, along with other employees of the Defendant, engaged in activities related to interstate commerce, including but not limited to:
>
>> a. making calls to out-of-state customers and vendors;
>>
>> b. communicating via mail, electronic and otherwise, with out-of-state customers and vendors;
>>
>> c. unloading and otherwise using goods which originated from out-of-state suppliers, including foods and cleaning supplies;
>>
>> d. cooking with ingredients sourced from out-of-state suppliers; and
>>
>> e. authorizing credit and/or debit card purchases.
>
> 77. Defendant paid Plaintiff a fixed salary.

> 78. Plaintiff was given a job title consistent with a management employee, however, she did not perform managerial duties.
>
> 79. Rather, Defendant assigned job duties of non-exempt employees, including but not limited to cooking, washing dishes, cleaning, preparing food, and gathering supplies.
>
> 80. The job duties listed in Paragraph 70 [*sic*] were Plaintiff's primary job duties, which Plaintiff spent more than 80% of her time performing.[4]

(Doc. 14 at 8–9).

*Some* of the activities that Gibbs lists in ¶ 76 are interstate-commercial activities. For example, "making calls" and "communicating" with out-of-state vendors are interstate-commercial activities. So is "unloading . . . goods which originated from out-of-state suppliers." *See Southwest Airlines Co. v. Saxon*, 142 S. Ct. 1783 (2022) (holding that "airline employees who physically load and unload cargo on and off planes traveling in interstate commerce are, as a practical matter, part of the interstate transportation of goods" for purposes of the Federal Arbitration Act); *see also Ray v. Adams and Assocs.*, 2022 WL 1090111, at *3 (S.D. Fla. Apr. 12, 2022) (holding that an allegation that the plaintiff "regularly and recurrently unloaded the truck" was enough for FLSA individual coverage).

And other activities in ¶ 76 either are not interstate-commercial activities or the Court lacks enough information to make that determination. "[U]sing goods which originated from out-of-state suppliers" and "cooking with ingredients sources from out-of-state suppliers" are not interstate-commercial activities. *See Thorne*, 448 F.3d at 1267 ("When goods reach the customer for whom they were intended, the interstate journey ends and employees engaged in any further

---

[4] The Court assumes that Gibbs meant to cross-reference ¶ 76, which would be the most helpful to her argument that she engaged in interstate commerce. Paragraph 70 offers factual allegations related to Gibbs' Section 1981 claim: "In stark contrast to its treatment of Plaintiff, the Defendant did not terminate nor deny reasonable accommodation or FMLA requests of employees whom did not engage in interracial relationships, have mixed-race children, or whom otherwise closely associated with African American individuals." (Doc. 14 at 8 ¶ 70).

*intra*state movement of the goods are not covered under the Act."). And "authorizing credit and/or debit card purchases" *would* be interstate-commercial activities if they were interstate transactions, but Gibbs does not make that allegation.

These allegations (taken as true and making all reasonable inferences in Gibbs' favor) do not plausibly suggest that Gibbs used "the instrumentalities of interstate commerce in [her] work" on a "regular and recurrent" basis. *Id.* at 1266.

There is no non-speculative basis to say that Gibbs engaged in any of the ¶ 76 activities that *could* be interstate-commercial activities on a "regular and recurrent" basis. *Id.* And it does not change the outcome to assume that the ¶ 76 activities took up "more than 80%" of Gibbs' time. (Doc. 14 at 9 ¶ 80). Because some of those activities are sufficient and others are insufficient, it would take guesswork upon guesswork to conclude that Gibbs plausibly alleged that she engaged in actual interstate-commercial activities on a "regular and recurrent" basis. *Id.* And Gibbs' allegations therefore fall short of "rais[ing] a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

Gibbs' imprecision as to whether she engaged in any of these activities on a regular and recurrent basis reflects a broader trend of illusory allegations within Gibbs complaint (and specifically her FLSA claim). Gibbs never defines her former position with any specificity. And where she discusses job responsibilities, the structure of her allegations make it difficult to discern whether those responsibilities fell on Gibbs specifically or, instead, on Tri Cities' employees generally (and thus, not necessarily on Gibbs). For example, Gibbs says that "Plaintiff, *along with other employees of the Defendant*, engaged in activities related to interstate commerce," including but not limited to making calls, communicating via mail, unloading and using goods from out-of-state suppliers, cooking with out-of-state supplies, and authorizing card purchases. (Doc. 14 at 8–9 ¶ 76 (emphasis added)). And she says that "Defendant assigned job duties of non-exempt employees, including but not limited to cooking, washing dishes, cleaning, preparing food, and gathering supplies." (*Id.* at 9 ¶ 79). And in ¶ 80, where she tried to identify

13

her primary job responsibilities, Gibbs cross referenced the wrong paragraph.

The Court expects candor and appreciates clarity. Gibbs' FLSA allegations lack the substance and clarity necessary to conclude that she plausibly alleged FLSA individual coverage. So for the reasons set forth above, the Court dismisses Gibbs' FLSA claim (Count D).

* * *

The Court **grants in part** and **denies in part** Tri Cities' partial motion to dismiss. (Doc. 16). The Court **denies** the motion as to Gibbs' ADA claim (Count B). The Court **grants** the motion as to her Section 1981 claim (Count C) and dismisses that claim **with prejudice**. And the Court **grants** the motion as to her FLSA claim (Count D) and dismisses that claim **without prejudice**.

The Court grants leave to file a Third Amended Complaint that re-pleads her FLSA claim and rectifies any pleading defects on or before Thursday, July 28, 2022. If she does so, Gibbs must (among other things) identify *her* former position with Tri Cities, *her* specific job responsibilities, and the percentage of time *she* spent on each of those responsibilities.

**Done** and **Ordered** on July 7, 2022.

_____
**COREY L. MAZE**
UNITED STATES DISTRICT JUDGE